*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★      ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00824-CR

Stephanie Ann **GONZALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 05-06-00046-CRK
Honorable Donna Rayes, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:         Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:    April 29, 2009

AFFIRMED

Stephanie Ann Gonzales was convicted by a jury of delivery of between four and 200 grams of cocaine, and sentenced by the court to twenty years incarceration. In two points of error, Gonzales argues the evidence was legally and factually insufficient to prove the package delivered by Gonzales was the substance that tested positive for cocaine. We disagree and affirm the trial court's judgment.

Raul Guerrero worked for the 81st District Narcotics Task Force as an investigator during March 2004. In the course of his work, Guerrero used confidential informants and sometimes worked undercover. Guerrero testified one of his confidential informants set up a meeting for Guerrero to buy cocaine from Stephanie Gonzales. On March 8, 2004, Guerrero and his partner went to the restaurant in Karnes City where the meeting had been scheduled, and Guerrero met Gonzales in the parking lot. After some negotiations, Guerrero paid $200 and Gonzales handed him a clear plastic bag containing a "chunk." She told him it was "good cocaine."

Guerrero testified he drove back to the task force office in Floresville with the baggie in the center console of his car. When he arrived at the office, Guerrero put the baggie in the evidence locker assigned to him and locked it. The next morning, Guerrero removed the baggie from the locker and prepared to send it to the crime lab. Guerrero weighed the substance, prepared the submission paperwork, and put it all in an envelope he initialed and sealed. Pursuant to office policy, these procedures were witnessed by another agent or a supervisor. Guerrero then put the envelope in a mailing envelope and sent it by certified mail to the Texas Department of Public Safety crime lab in Corpus Christi. Guerrero identified State's exhibit 1 as being the envelope in which he placed the baggie Gonzales gave him and that he mailed to the DPS crime lab. Written on the envelope are Guerrero's his initials and the date he prepared it.

Hector Cadena, a chemist who worked at the DPS crime lab in Corpus Christi in 2004, also testified for the State. Cadena testified that when a piece of evidence was received in the crime lab, the evidence custodian opened it, assigned it a unique laboratory case number, and entered it into the logbook. The evidence custodian would write the laboratory case number on the envelope, remove the submission form sent by the agency from the envelope, and then reseal the envelope. The

information on the form sent by the submitting agency and the lab case number were then entered into the computer. In this case, the evidence was assigned lab case number L3C-81552, and that number is written on State's exhibit 1. After resealing the envelope, the evidence custodian placed it in the lab's evidence vault until it was time to be analyzed.

Cadena testified he analyzed the substance submitted by Guerrero in State's exhibit 1, and concluded the net weight was 5.73 grams and the substance contained cocaine. After completing the tests, he put the evidence back into the original envelope, sealed it, and placed it in the vault. His conclusions appear on State's exhibit 2, the lab report. The lab case number and the information from the submission form – the suspect's name, the agency case number, and the offense date – all appear on the laboratory report. Cadena testified the evidence would be kept in the DPS lab's vault until it was returned to the submitting agency together with the lab report. He testified exhibit 1 appears to have been opened and resealed twice – once by the lab's evidence custodian and once by him. The tape around the edges of exhibit 1 was placed there by the DPS lab, and Cadena concluded exhibit 1 has not been unsealed and opened since he sealed it.

The State's final witness was Jesse Evins, a detective with the Floresville Police Department. In 2004, Detective Evins was the assistant commander of the 81st Judicial District Narcotics Task Force and oversaw its day-to-day operations. Detective Evins testified all the narcotics task forces in the state were shut down in 2006. The chief of the Floresville Police Department accepted responsibility for the evidence that had been collected by the 81st Task Force, and assigned Detective Evins to gather the evidence. Detective Evins testified he went to the DPS crime lab in Corpus Christi to collect evidence that had been submitted by the 81st Task Force. State's exhibit 1 was one of the packages he picked up from the DPS lab in Corpus Christi. When he received State's exhibit

1 from the crime lab, the lab report, State's exhibit 2, was stapled to it. Detective Evins took the evidence back to Floresville and placed it in the evidence locker at the police department, where it remained until the trial. Detective Evins took the envelope and attached report out of the locker in Floresville the night before he testified and brought them with him to court in Karnes City.

Viewing this evidence in the light most favorable to the jury's verdict, a rational fact-finder could have found beyond a reasonable doubt that Gonzales delivered the contents of State's exhibit 1 to Guerrero, and that the contents of State's exhibit 1 tested positive for cocaine. Accordingly, we overrule Gonzales's legal insufficiency point of error. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Gonzales also argues the evidence is factually insufficient to support the verdict, contending the great weight and preponderance of the evidence contradicts the verdict. Gonzales argues two alleged inconsistencies in the State's evidence and the failure of the State to present witnesses to corroborate Guerrero's version of the sale compels this result. The State is not required to present any particular witness and, in this case, met its burden to prove Gonzales delivered the controlled substance without the need for additional witnesses. *See Payan v. State*, 199 S.W.3d 380, 383 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd), *cert. denied*, 549 U.S. 1170 (2007). The failure to present cumulative evidence does not amount to evidence inconsistent with the verdict.

Moreover, we disagree with the assessment that the State's evidence was internally inconsistent. Gonzales contends "the State's witnesses were unable to state with any degree of certainty whether or not the alleged contraband had been returned to the task force, by use of the mails, or by in-person transfer." Detective Evins testified unequivocally that he physically collected State's exhibit 1, which was labeled with the case number assigned to the substance sent by

Guerrero, and which had the corresponding lab report attached to it, from Corpus Christi, carried it to Floresville, and placed it in the evidence locker. This testimony was not challenged or contradicted. Gonzales relies on Cadena's general description of the DPS lab's procedures, during which he stated that after testing a substance, he would reseal it and put it back into the vault. After the lab report was generated, an evidence custodian would mail the evidence envelope and report back to the submitting agency. Cadena was not asked about and did not purport to have any knowledge of whether or how the evidence *in this case* was returned to the task force. Detective Evins explained that because the narcotics task forces were part of DPS, the DPS lab almost always kept their evidence until a court issued an order of destruction. He recalled only a few instances when, due to case specific circumstances, the contraband was mailed back to the task force.

Gonzales also contends Guerrero's description of the substance Gonzales delivered to him as a "chunk" conflicts with Cadena's testimony that he performed his chemical analysis on a "powder substance." This issue was not further explored during the trial. Viewing the evidence in a neutral light, especially the State's evidence establishing the chain of custody, we cannot say the evidence supporting the verdict is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *See Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). We therefore overrule Gonzales's second point of error.

The trial court's judgment is affirmed.

Steven C. Hilbig, Justice

Do not publish